UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
**Case Number:  21-22155-CIV-MARTINEZ-BECERRA**

WESTON MSIKITA,

     Plaintiff,

vs.

THOMAS B. VILSACK, SECRETARY,
U.S. DEPARTMENT OF AGRICULTURE
ANIMAL AND PLANT HEALTH
INSPECTION SERVICE (APHIS),
U.S. DEPARTMENT OF AGRICULTURE,

     Defendant,

_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS MATTER** comes before the Court on the Motion for Summary Judgment filed by

Defendant Thomas B. Vilsack, in his official capacity as Secretary of Agriculture, U.S.

Department of Agriculture, by and through the undersigned Assistant United States Attorney

("Motion for Summary Judgment").  (ECF No. 35).  Plaintiff Weston Msikita responded to the

Motion for Summary Judgment, (ECF No. 42), to which Defendant replied, (ECF No. 43).  After

careful consideration of the relevant briefing and the record, and being otherwise advised in the

premises, the Court **GRANTS** Defendant's Motion for Summary Judgment.

## I.     BACKGROUND[1]

This case arises from the race and national origin discrimination, harassment, and

retaliation Plaintiff allegedly experienced as an employee of the U.S. Department of Agriculture

_____

[1]     The facts are undisputed unless stated otherwise.  Where the facts are in dispute, the Court construes them in favor of the non-moving party.  *See Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1303–04 (11th Cir. 2016).

("USDA" or "Defendant").   Plaintiff began working for USDA in October 2013 and, at all relevant times, worked as a plant pathologist, GS-11, within the Animal Plant Health Inspection Service ("APHIS") arm of USDA.  (Def. Statement of Material Facts ("SMF") ¶ 1, ECF No. 34). Plaintiff is Black and Zambian.  (*See* Dep. of Weston Msikita ("Msikita Dep.") at 19:10–21, 33:20–34:16, ECF No. 34-1).

Plant pathologists examine materials containing fungi, bacteria, viruses, and other organisms.  (SMF ¶ 5).  Plaintiff was an area identifier for Miami, Florida.  (*Id.* ¶ 3).  When cargo comes into a port, it is inspected by personnel from U.S. Customs and Border Protection ("CBP").  (*Id.* ¶ 3).  If CBP detects or suspects fungus on a plant or plant product, CBP passes the items to an area identifier for further inspection.  (*Id.* ¶ 3).  The area identifier will either (1) make the identification; or (2) send the item to a National Specialist at National Identification Services ("NIS") for final identification confirmation.  (*Id.* ¶¶ 3, 6, 11; *see also* Decl. of Megan Romberg ("Romberg Decl.") ¶¶ 2–3, ECF No. 34-2; Decl. of John McKemy ("McKemy Decl.") ¶¶ 2–3, ECF No. 34-7).

Identification Authority ("IDA") is the authority given to area identifiers to provide final identifications for intercepted items both domestically and at U.S. ports of entry.  (SMF ¶ 6).  In the area of plant pathology, there are two types of IDA available: (1) Full IDA, and (2) Conferred IDA.  (IDA Guide at 19, ECF No. 34-3).  Before March 16, 2015, there was a third type of IDA available called Provisional IDA.  (SMF ¶ 9).  Provisional IDA "bestow[ed] the same authority to identify taxa as does IDA issued by NIS."  (Apr. 11, 2012, USDA Provisional IDA procedures at 1, ECF No. 34-6).

When an identifier first begins in their position, they must send their tentative identifications of intercepted items to NIS until they gain Final IDA authority for each specific

organism. (SMF ¶ 11). Plaintiff obtained Provisional IDA for several organisms. (*Id.* ¶ 12; Pl. Opp. Statement of Material Facts ("Resp. SMF") ¶ 12, ECF No. 42). When Plaintiff was provided Provisional IDA, identifiers had to convert their Provisional IDA to Full IDA within two years from the date of issuance. (SMF ¶ 12; Resp. SMF ¶ 12; *see also* Romberg Decl. ¶ 4; Apr. 11, 2012, Letter at 1, ECF No. 34-6).

Doctors Megan Romberg and John McKemy are National Specialists in Mycology, with APHIS, USDA, PPQ, NIS. (Romberg Decl. ¶ 1; McKemy Decl. ¶ 1). Drs. Romberg and McKemy reviewed preliminary identifications made by Plaintiff. (Romberg Decl. ¶ 8; McKemy Decl. ¶ 8). In March 2014, Drs. Romberg and McKemy drafted a memorandum titled "Concerns about the identifications made by Miami port identifier Weston Msikita." (Romberg Decl. ¶ 14; McKemy Decl. ¶ 12). They sent the Memorandum to USDA in August 2014. (SMF ¶ 33).

The 2014 Memorandum described the frequency of Plaintiff's incorrect interceptions and provided specific details about the different types of misidentifications. (*See id.*; Resp. SMF ¶ 33; 2014, Memorandum ("2014 Memo"); ECF No. 34-14). Specifically, the Memorandum noted that 42 of the 177 interceptions sent by Plaintiff to NIS concluded that no pathogen had been found. (2014 Memo at 1). Of those 42 interceptions, 79% were correct in that no fungal organism was present, and 21% were incorrect, in that a fungal organism was present but was not seen or identified by Plaintiff. (*Id.*). Of the interceptions that Plaintiff provided a tentative identification, 40% were incorrectly identified and 60% were correctly identified. (*Id.*). The Memorandum concluded that "[i]t was evident during training that [Plaintiff] was not comfortable with many of the basics of morphological identification and required extensive training." (*Id.* at 3). And that "[g]iven the ostensible amount of experience presented by [Plaintiff], the amount of teaching required was disconcerting." (*Id.*).

In August 2014, Pedro Millan—Plaintiff's first-line supervisor from the date of his hiring to April 2016—emailed four USDA directors regarding the Memorandum. (Aug. 15, 2014, Email at 1–2, ECF No. 42-5; SMF ¶ 23). The email stated that Plaintiff "must be given the opportunity to respond to the lack [of] performance allegations" and that it would be "unfair" if USDA relied only on the comments from NIS given their technical nature. (Aug. 15, 2014, Email at 1 (emphasis in original)). Mr. Millan stated that he "strongly belie[ved] with the coaching of Fred and Improvement on their communication, processes/procedures will be getting better" and that Plaintiff "is a great assess [sic] to the agency." (*Id.* at 2).

Plaintiff alleged, and later testified in his deposition, that his employer placed him on a five-day Performance Improvement Plan ("PIP") in December 2014. (SMF ¶ 51; Resp. SMF ¶ 31). But now, Plaintiff does not dispute that he was not placed on a PIP. (SMF ¶ 52; Resp. SMF ¶ 52).

On March 16, 2015, the policy authorizing Provisional IDA in plant pathology ended. (Mar. 16, 2015, Letter at 1, ECF No. 34-5). The parties dispute whether Plaintiff applied for Full IDA authority before the policy ended. (*See* SMF ¶ 13; Resp. SMF ¶ 13; Apr. 20, 2015, E-mail Chain at 1–2, ECF No. 42-2). On March 10, 2015, Plaintiff emailed Doctor Megan Romberg stating that he was submitting his application for Full IDA to identify a certain organism. (Mar. 10, 2015, Email, ECF No. 42-2). On April 20, 2015, Plaintiff sent a follow-up email inquiring into his application. (Apr. 20, 2015, Email, ECF No. 42-2). The same day, Dr. Romberg responded that changes for applying to Full IDA from Provisional IDA "changed about the time we received this email." (Apr. 20, 2015, Email, ECF No. 42-2). Accordingly, "[t]hose changes are now in place and provisional IDA is no longer an avenue for receiving IDA for any mycology identifier." (*Id.*). Even so, Dr. Romberg noted that

4

"[a]ccording to the policy as it stood," Plaintiff had a year from January 15, 2015, to "submit an interception of this fungus *to NIS* to support an application for full IDA." (*Id.* (emphasis added)). Instead, the interceptions listed on Plaintiff's application "were given final ID *by another identifier at the port, not NIS.*" (*Id.* (emphasis added)). It is undisputed that Plaintiff lost his Provisional IDA and did not obtain Full IDA. (SMF ¶ 12–14; Resp. SMF ¶ 12–14).

In August 2015, Plaintiff was scheduled to attend the American Phytopathological Society meeting in Pasadena, California. (SMF ¶ 38). Although the parties dispute whether Plaintiff attended the meeting, they agree that no action was taken against Plaintiff in response to his attendance, or lack thereof. (SMF ¶¶ 39–40; Resp. SMF ¶¶ 39–40).

In February 2016, Mr. Millan issued a Letter of Instruction ("LOI") to Plaintiff. (Feb. 9, 2016, LOI, ECF No. 34-15). The LOI reported that recent analyses by NIS and Field Operations of Plaintiff's identifications indicated "a trend of increased use of 'negative results', decreased preliminary identification forwarded to National Specialists for confirmation, and lack of earned Identification Authority for Reportable pests[.]" (*Id.*). The LOI included attached statistical graphs and table analyses of Plaintiff's performance compared to other identifiers. (*See id.* at 3–8). Plaintiff asserts that several identifiers had more negative results than he did. (*See* Add'l Facts ¶ 6). In his deposition, however, Plaintiff could not rebut that he had an increased use of negative results and a decreased number of preliminary identifications forwarded to NIS for identification. (*See* Msikita Dep. at 58:8–65:25).

The LOI explained USDA's concern that pathogens may be inadvertently released into the environment without proper identification due to Plaintiff's misidentifications. (LOI at 1). The LOI, to which Plaintiff acknowledged receipt, required Plaintiff forward his samples to NIS for confirmation for the next forty-five days. (*Id.*). A follow-up letter from Louis Volpe—

Plaintiff's second-line supervisor from the fall of 2016 until Plaintiff's resignation—confirmed expiration of the forty-five days and the restoration of Plaintiff's right to make certain identifications. (Jan. 13, 2017, Letter, ECF No. 42-1; SMF ¶ 24).

In June 2016, Plaintiff submitted a formal complaint with the Equal Employment Opportunity Commission ("EEOC") alleging race and national origin discrimination and retaliation. (SMF ¶ 28). The USDA's EEOC Office accepted Plaintiff's claims for investigation. (*See id.* ¶ 29; Feb. 2, 2017, Acceptance per EEOC Order at 1–4 ("Feb. 2017 Accept."), ECF No. 34-11). USDA agreed to investigate Plaintiff's assertions that he was discriminated against, harassed, and experienced retaliation when USDA issued the LOI, NIS sent the Memorandum, USDA placed him on the PIP, and when USDA questioned him about his attendance at the meeting in Pasadena. (*See* Feb. 2017 Accept. at 1–4).

In February 2017, USDA sent Plaintiff a written Letter of Reprimand ("LOR"). (Feb. 8, 2017, LOR at 1, ECF No. 34-17). The LOR reprimanded Plaintiff for his "[f]ailure to follow instructions to only put comments on form 309 which are in line with standard identifiers [sic] procedures and to send all intercepted materials to the national identifiers." (*Id.*). The LOR explained that in late 2016, Carlos Caraballo—Plaintiff's first-line supervisor from April 2016 to March 2017—received an email from Dave Farmer—the National Operations Manager and IDA Program Manager, Field Operations—that Plaintiff was including improper notations when making tentative identifications on the Agriculture Risk Management ("ARM") System. (*Id.*; SMF ¶¶ 16, 21). The LOR states that after receiving this email, and having a brief conversation with Mr. Farmer, Mr. Caraballo met with Plaintiff and provided him with instructions on how to properly notate the ARM interception records. (LOR at 1). The LOR further states that Mr. Farmer reported that Plaintiff was only submitting a portion of interceptions. (*Id.*). Despite

being given corrective instructions—as demonstrated in the emails to Plaintiff attached to the LOR—the LOR concludes that Plaintiff failed to comply. (*Id.* at 1–2). The LOR warned that "any future instances of misconduct of any kind will subject [Plaintiff] to more severe discipline." (*Id.*). Under the line where Plaintiff was supposed to confirm receipt of the LOR, Plaintiff inserted a handwritten comment that he did "not agree with the contents of the letter and the reasons stated." (*Id.* at 4).

Although the LOR noted that it would be filed in Plaintiff's personnel folder for two years, the period was shortened to eighteen months. (*Id.* at 2). On March 16, 2017, USDA re-issued a corrected copy of the LOR. (*See* ECF No. 42-9 at 2). USDA does not dispute that the eighteen-month period restarted when USDA re-issued the LOR to reflect the shortened period. (*See* Add'l Facts ¶ 9; Resp. Add'l ¶ 9). Based on an email from Plaintiff to Mr. Caraballo, Plaintiff understood the LOR to be in effect for a total of nineteen months based on the re-issuance. (*See* May 5, 2017, Email "Plant pathology identification and Letter of Reprimand," at 1, ECF No. 42-7). Without citing to any evidentiary support, Plaintiff claims that the LOR remained in his personnel file for twenty-six months, not eighteen. (Add'l Facts ¶ 9).

In September 2017, Plaintiff filed a second EEOC complaint. (SMF ¶ 30). The USDA's EEOC Office partially accepted Plaintiff's claims for investigation. (*See id.* ¶¶ 30–31; Sept. 21, 2017, Partial Acceptance ("Sept. 2017 Partial Accept.") at 1–4, ECF No. 34-13). USDA partially dismissed the second complaint to the extent it raised discrimination and harassment claims arising out of the LOI, which were addressed in Plaintiff's first EEOC complaint. (Sept. 2017 Partial Accept. at 3). USDA agreed to investigate Plaintiff's assertions that he was discriminated against, harassed, and experienced retaliation when USDA issued the LOR; increased its findings of Plaintiff's false identifications; maintained a false database of his work;

7

ignored his requests for objective national specialists to review his identifications; failed to reprimand national specialists for failing to follow standard procedures; failed to return his samples; and sent his work to national specialists for review. (*Id.* at 1–2).

From October 1 through 9, 2017, a water pipe at the NIS lab leaked. (SMF ¶ 49; *see also* Oct. 26, 2017, E-mail Chain re: Water Leak ("Water Leak Emails") at 3–10, ECF No. 34-18). As a result of the leak, twenty-three of Plaintiff's interceptions were soaked in water and had to be destroyed because secondary mold had begun to grow on them. (SMF ¶ 49). NIS informed Plaintiff about the incident and offered to review the digital images of his interceptions to determine whether they were eligible for Final IDA authority. (SMF ¶ 50). Plaintiff requested that all twenty-three samples be sent back to him. (Water Leak Emails at 2). It is undisputed that NIS has the authority to return or not return samples to identifiers. (SMF ¶ 48).

In February 2020, the EEOC Administrative Judge determined that Plaintiff had not established that he was discriminated against or subjected to a hostile work environment on the basis of his race, national origin, or retaliation for prior EEOC activity. (Order at 8, ECF No. 35-1). Plaintiff resigned from his position with USDA on May 18, 2020. (*See* ECF No. 1 ¶ 33). He asserts that the discrimination, harassment, and retaliation he faced resulted in his constructive termination. (*See* Compl. ¶ 27, ECF No. 25).

In June 2021, Plaintiff initiated this action against USDA. (*See* ECF No. 1). Plaintiff asserts three counts against USDA under Title VII of the Civil Rights Act of 1964: (1) Race and National Origin Discrimination; (2) Race and National Origin Harassment; and (3) Retaliation. (Compl. ¶¶ 28–52). Defendant moves for entry of summary judgment on all of Plaintiff's claims. (*See generally* Mot. at 1, ECF No. 35). Defendant argues that Plaintiff has failed to establish a *prima facie* case of discrimination. (*Id.* at 3–6; Reply at 2–4, ECF No. 43). With

respect to Plaintiff's hostile work environment claims, Defendant contends that Plaintiff cannot show any connection between the protected activity and any adverse action. (Mot. at 7–8; Reply at 3–4). Further, Defendant argues that Plaintiff's hostile work environment claims fail because he cannot show that the legitimate, non-discriminatory reasons for the criticism of his performance were pretextual. (Mot. at 9–10).

In response, Plaintiff, relying on his deposition and affidavit, reiterates that he was subject to harassment and discrimination during his employment with USDA. (Resp. at 4). He contends that he was falsely accused of releasing pathogens into the environment without certification, retaining portions of plant pathogens at the port, and failing to attend the meeting in Pasadena. (Aff. of Weston Msikita ("Msikita Aff.") at 2–4, ECF No. 42-3). He asserts that he was questioned about why he left early one time in 2019, that his request to speak with the Deputy Administrator to discuss EEOC matters and harassment was denied, and that he was ordered to present documentation regarding his sick leave. (*Id.* at 4–5). He states that management sent him "threatening" and "harassing" emails, and that management failed to respond to various emails from him. (*Id.*). He also alleges that Mr. Volpe yelled at him, "I will fix you if you fail to obey my orders," "you are dumb" and asked Plaintiff, "Did you follow my orders?" (*Id.* at 5; Resp. SMF ¶ 25).

Plaintiff also contends that his co-worker, Fred Zimmerman, a White American, and a plant pathologist with USDA, was promoted to a position that was not posted to the public. (Add'l Facts ¶¶ 2–3; Msikita Aff. at 4). Plaintiff asserts that he was more qualified for the position that Mr. Zimmerman because he trained Mr. Zimmerman. (Add'l Facts ¶¶ 2–3). Plaintiff also generally refers to "employees similarly situated" who were treated differently than him. (Msikita Aff. at 2–3).

In addition, Plaintiff argues that USDA failed to provide him a reasonable accommodation while he was being treated for cancer and that he was subject to inappropriate age-related comments. (Resp. at 6). These allegations are properly pled as an age discrimination claim under the Age Discrimination in Employment Act and as disability discrimination under the Americans with Disabilities Act, neither of which have been pled here. Plaintiff cannot amend his complaint through argument in opposition to summary judgment. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004). These claims, and their related facts, are not properly before the Court. *See id.*; *see also Dorman v. Chaplains Office BSO*, 36 F.4th 1306, 1317 (11th Cir. 2022) ("[F]acts contained in a motion or brief 'cannot substitute for missing allegations in the complaint'" (quoting *EEOC v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018, 1030 n.5 (11th Cir. 2016) (citation omitted)). Accordingly, the Court will not consider them when evaluating whether Plaintiff's pleaded claims survive summary judgment.

In support of its Motion for Summary Judgment, Defendant submitted proof that the promotion obtained by Mr. Zimmerman was posted publicly. (*See* Resp. Add'l Facts ¶ 2; GS-0401-13/14 Agriculturist, Vacancy Dashboard ("Vacancy Dashboard"), ECF No. 44-1; Decl. of Andrea Optiz ¶¶ 3, 5, ECF No. 44-1). The job post shows that several people, including Mr. Zimmerman, applied for the position, but that Plaintiff did not apply. (*See* Vacancy Dashboard). Defendant also points to the unrebutted facts that Mr. Zimmerman worked for USDA for more than 20 years prior to Plaintiff joining USDA, and that Mr. Zimmerman was a plant pathologist for over 10 years prior to Plaintiff joining USDA. (Resp. Add'l Facts ¶ 3; Msikita Dep. at 27:19–29:21).

II.    **DISCUSSION**

As a federal employee, Plaintiff's claims are governed by Title VII's federal-section provision. *See* 42 U.S.C. § 2000e-16(a). This provision provides that all personnel actions "shall be made free from any discrimination based on race, color, religion, sex, or national origin." *Id.* The three archetypal Title VII claims are

> (1) The disparate-treatment claim, i.e., a "claim that an employee has suffered a tangible employment action based on race or other prohibited characteristics";
>
> (2) The hostile-environment claim, i.e., a claim stemming from mistreatment based on a protected characteristic that "is sufficiently 'severe or pervasive' that it can be said to alter the terms, conditions, or privileges of employment."
>
> (3) The retaliation claim, i.e., a claim stemming from "retaliation for protected conduct" where the mistreatment "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."

*See Babb v. Sec'y, Dep't of Veterans Affs.* ("*Babb II*"), 992 F.3d 1193, 1204–05 (11th Cir. 2021). Plaintiff alleges all three types of claims, and Defendant moves for summary judgment on each of them.

**A. Race and National Origin Discrimination (Count I)**

The law in the Eleventh Circuit has recently changed with respect to Title VII claims for federal-sector employees. Until just a few years ago, a federal employee could set forth a disparate treatment claim using circumstantial evidence under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The Court will explain this framework because the Eleventh Circuit continues to apply *portions* of it even after these legal developments.

Under the *McDonnell-Douglas* framework, an employee first needs to establish a *prima facie* case of discrimination by showing that (1) he belongs to a protected class, (2) he suffered an adverse employment action, (3) he was qualified to perform the job in question, and (4) that

11

his employer treated "similarly situated" employees outside his class more favorably.  *See Lewis v. City of Union City ("Lewis I")*, 918 F.3d 1213, 1220–21 (11th Cir. 2019) (en banc).  The U.S. Supreme Court's decision in *Babb v. Wilkie ("Babb I")*, 140 S. Ct. 1168 (2020) abrogated the second and third steps of the *McDonnell-Douglas* framework.  It did so after examining the language in the Age Discrimination in Employment Act ("ADEA") and concluding that "age must be the but-for cause of *differential treatment*, not . . . a but-for cause of the *ultimate decision*."  140 S. Ct. at 1171–74 (emphasis in original).  On remand from *Babb I*, the Eleventh Circuit applied the analysis from *Babb I* to Title VII claims brought by federal employees.  *See Babb II*, 992 F.3d at 1204–05.  Together, *Babb I* and *Babb II* eliminated the requirement that an employee show that the discrimination was a but-for cause of the adverse employment action.

But *Babb I* and *Babb II* did not address the first or fourth steps of the *McDonnell-Douglas* framework.  *See Lewis v. Sec'y of the U.S. Air Force ("Lewis III")*, No. 20-12463, 2022 U.S. App. LEXIS 18153, at *36 (11th Cir. June 30, 2022).  After the *Babb* opinions, "a federal sector employee alleging Title VII and ADEA claims must still establish a *prima facie* case that a decision was not 'made free from any discrimination,' and neither *Babb I* nor *Babb II* suggested that the comparator analysis in *Lewis I* is inappropriate under the new standards."  *Id.* at *37.

Therefore, under today's legal framework, a comparator is still required.  An adequate comparator must be "similarly situated in all material respects" to the plaintiff.  *Lewis I*, 918 F.3d at 1226.  "This determination relies on the individuals' 'substantive likenesses,' and a comparator may be sufficiently similar if []he has 'engaged in the same basic conduct (or misconduct) as the plaintiff,' was subject to the same employment policies as the plaintiff, had the same supervisor, and 'share[d] the plaintiff's employment or disciplinary history.'"  *Lewis III*, 2022 U.S. App. LEXIS 18153, at *33–34 (quoting *Lewis I*, 918 F.3d at 1227–28).

If an employee cannot proffer a comparator, he "'will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent'—what we have sometimes referred to as a 'convincing mosaic of circumstantial evidence.'" *Troupe v. DeJoy*, 861 F. App'x 291, 294 (11th Cir. 2021) (quoting *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)).   "A 'convincing mosaic' may be shown by evidence that demonstrates, among other things, (1) 'suspicious timing, ambiguous statements . . . , and other bits and pieces from which an inference of discriminatory intent might be drawn,' (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis v. City of Union City* (*"Lewis II"*), 934 F.3d 1169, 1185 (11th Cir. 2019) (citation omitted).

With these principles in mind, the Court evaluates whether Plaintiff has set forth a *prima facie* case of disparate treatment.  Because Plaintiff does not assert that a convincing mosaic of discrimination existed, the Court focuses on whether Plaintiff has proffered an adequate comparator.  Plaintiff argues that Fred Zimmerman was a similarly situated employee who was treated more favorable than him.  (Resp. at 4, ECF No. 37).  Mr. Zimmerman is White and American.  (SMF ¶ 54; Add'l Facts ¶ 2; Msikita Dep. at 23:22–25:4).  Mr. Zimmerman and Plaintiff were both plant pathologists at USDA.  (Pl. Additional Facts ("Add'l Facts") ¶ 2, ECF No. 42; Def. Resp. to Add'l Facts ¶ 2, ECF No. 44).  In 2016, Mr. Zimmerman was promoted to USDA headquarters in Riverdale, Maryland.  (SMF ¶ 56).  Plaintiff argues that he was more qualified for the promotion than Mr. Zimmerman, and that Plaintiff never had the opportunity to apply for the promotion because the job position was not posted publicly.  (SMF ¶ 57; Resp. SMF ¶ 57).

As a starting point, Plaintiff's unsupported contention that the position was not posted publicly is refuted by the record. (Resp. Add'l Facts ¶ 2). The record reflects that the position was posted and that while several people applied for it, Plaintiff did not. (Resp. Add'l Facts ¶ 2; Vacancy Dashboard; Decl. of Andrea Optiz ¶¶ 3, 5).

Other than Plaintiff's own uncorroborated statements, the record does not support Plaintiff's allegation that he was more qualified for the position than Mr. Zimmerman. (Resp. SMF ¶ 3; Msikita Dep. at 30:22–31:2). Even if Plaintiff did train Mr. Zimmerman, Plaintiff does not contest that Mr. Zimmerman worked for USDA for over 20 years prior to Plaintiff joining USDA, and was a plant pathologist for over 10 years before Plaintiff joined USDA. (*See* Msikita Dep. at 27:23–29:21; Resp. to Add'l Facts ¶ 3). In fact, Plaintiff's own statements suggest that Mr. Zimmerman was more experienced than Plaintiff. Plaintiff testified that Mr. Zimmerman "made final identification for some of the tentative identifications that [Plaintiff] made, and [Mr. Zimmerman] approved certification for [Plaintiff's] disease diagnosis." (Msikita Dep. at 88:25–89:6). Plaintiff also referred to Mr. Zimmerman as a "supervisor" in a February 2017 letter to Mr. Caraballo discussing his LOR. (Feb. 22, 2017, Letter at 2–3, ECF No. 42-8). In addition, there is no evidence that Mr. Zimmerman faced any disciplinary issues—let alone disciplinary issues similar to those faced by Plaintiff—and was treated more favorably than Plaintiff.

Because Plaintiff and Mr. Zimmerman's employment and disciplinary history are inapposite, Mr. Zimmerman is not a similarly situated comparator. *See Jones v. City of Birmingham*, No. 21-12962, 2022 U.S. App. LEXIS 26748, at *6 (11th Cir. Sept. 23, 2022) (affirming summary judgment for defendant where plaintiff "failed to produce any evidence that he and [the proffered comparator] had similar employment or disciplinary history"). Thus,

Plaintiff has failed to present a *prima face* case of discrimination.   Defendant is entitled to summary judgment on Count I.

## B.  Hostile Work Environment Claims

"There are two types of hostile work environment claims under Title VII: one based on discrimination, and the other based on retaliation." *Jones*, 2022 U.S. App. LEXIS 26748, at *9. "The tests for these claims differ in at least one important respect." *Id.* "To establish a discrimination-based hostile work environment, a plaintiff must prove that his employer was responsible for 'severe or pervasive' harassment based on the plaintiff's protected characteristic." *Id.* (quoting *Adams v. Austal*, 754 F.3d 1240, 1249 (11th Cir. 2014)). "But the standard for a retaliation-based hostile work environment claim simply requires that the employer's action 'might have dissuaded a reasonable worker' from filing a charge of discrimination." *Id.* (citing *Babb II*, 992 F.3d at 1196).  Plaintiff asserts both types of harassment claims, which are analyzed below.  (*See* Compl. ¶¶ 36–52).

### 1.  Race and National Origin Harassment (Count II)

In Count II, Plaintiff alleges that he was harassed based on his race and national origin. (Compl. ¶¶ 28–35).  "[M]istreatment based on race or other prohibited characteristics, including subjection to adverse conditions, is actionable even if the mistreatment does not rise to the level of a tangible employment action, but only if the mistreatment is 'sufficiently severe or pervasive' that it can be said to alter the terms, conditions, or privileges of employment." *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 861 (11th Cir. 2020).   The severity or pervasiveness requirement of a discrimination-based harassment claim "contains both an objective and subjective component." *Brannon v. Sec'y, Dep't of Veteran Affairs*, No. 22-10838, 2023 U.S. App. LEXIS 2389, at *13 (11th Cir. Jan. 31, 2023).  To satisfy both components, "the plaintiff

15

must show that []he personally perceived the environment to be abusive, and that a reasonable person would share that perception." *Id.* Several factors are relevant to the Court's inquiry into the objective component, including "1) 'the frequency of the conduct;' 2) 'the severity of the conduct;' 3) the degree to which the conduct was 'physically threatening or humiliating' as opposed to petty behavior or offensive utterances; and 4) 'whether the conduct unreasonably interfere[d] with the employee's job performance.'" *Id.* (quoting *Fernandez v. Trees, Inc.*, 961 F.3d 1148, 1151 (11th Cir. 2020)).

In the light most favorable to Plaintiff, the record does not support that Plaintiff suffered discrimination-based harassment. Plaintiff states that he received "harassing" and "threatening" emails, but he does not describe the contents of those messages. (Msikita Aff. ¶ 18). These conclusory and uncorroborated allegations do not create a dispute of fact that the USDA harassed Plaintiff based on his race or national origin. *See Malone v. U.S. Attorney Gen.*, 858 F. App'x 296, 302 (11th Cir. 2021) (affirming summary judgment for employer on harassment claim where plaintiff "never specified what the 'harassment' he allegedly suffered consisted of"); *see also Dent v. Joseph A. Giaimo, D.O., P.A.*, 606 F. Supp. 2d 1357, 1359 (S.D. Fla. 2009) ("[M]ere conclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well-supported motion for summary judgment." (citing *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)); *Weiss v. Std. Ins. Co.*, 672 F. Supp. 2d 1313, 1319 (S.D. Fla. 2009) (same).

Moreover, Mr. Volpe's one-time, offhanded comments—that Plaintiff was "dumb," and that he would "fix" Plaintiff if Plaintiff "fail[ed] to obey [his] orders"—do not rise to the level of severe or pervasive harassment. *See Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276–77 (11th Cir. 2002) ("Title VII is only implicated in the case of a workplace that is 'permeated

16

with discriminatory intimidation, ridicule and insult,' not where there is the 'mere utterance of an . . . epithet.'" (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993)); *Zarza v. Tallahassee Hous. Auth.*, 686 F. App'x 747, 752 (11th Cir. 2017) ("'[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious)' do not rise to the level of a hostile work environment under Title VII[.]" (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

Next, the Court addresses Plaintiff's claims that the LOI, LOR, and other performance critiques were based on false accusations, misinformation, and tampered data. Such assertions are entirely unsupported by the evidence. Plaintiff does not dispute that a pipe leak at the NIS lab destroyed several of Plaintiff's samples and that NIS identifiers offered to review digital images of his samples to determine if they were eligible for Final IDA authority. (SMF ¶¶ 49–50; Resp. SMF ¶¶ 49–50). As for the conflicting reports about Plaintiff's attendance at the meeting in Pasadena, that is neither here nor there because the parties agree that no adverse action was taken against Plaintiff because of the incident. (SMF ¶ 40; Resp. SMF ¶ 40). With respect to the denial of Plaintiff's application to transition his authority on an organism from Provisional to Final IDA, the record does not support that such application was wrongfully denied. Further, there is no evidence in the record to contradict or cast doubt on the findings that Plaintiff was misidentifying samples and only submitting partial samples to NIS.

Critically, there is no evidence to create a reasonable inference that the challenged conduct was based on Plaintiff's protected characteristics. *Malone*, 858 F. App'x at 302 (affirming grant of summary judgment for employer where plaintiff failed to show any harassment suffered was due to his protected characteristic); *Enwonwu v. Fulton-Dekalb Hosp. Auth.*, 286 F. App'x 586, 602 (11th Cir. 2008) (affirming grant of judgment as a matter of law in

favor of employer where plaintiff admitted that employer "did not make any comments about her race or national origin"); *cf. Fernandez*, 961 F.3d at 1155 (concluding that harassment gave rise to a hostile work environment claim where the "remarks repeatedly targeted a protected group with vulgar and derogatory language and continued unabated after complaints by [plaintiff] and his co-workers"). In sum, there is no dispute of fact as to Plaintiff's discrimination-based harassment claim. Defendant is entitled to summary judgment on Count II.

### 2. Retaliation (Count III)

In Count III, Plaintiff asserts that he was retaliated against for filing complaints with the EEOC reporting the alleged discrimination and harassment inflicted by his employer. (Compl. ¶¶ 45–52). Specifically, Plaintiff contends that after he filed the EEOC complaints, USDA retaliated against him by (a) subjecting him to different terms and conditions of employment than other employees, (b) holding him out to a higher standard that employees who did not share his protected characteristics, (c) treating him unfavorably and not promoting him, and (d) subjecting him to arbitrary, unfair, and dishonest criticisms. (Compl. ¶ 49). "A plaintiff establishes a prima facie case of retaliation by showing that: (1) '[]he engaged in statutorily protected activity'; (2) []he 'suffered a materially adverse action'; and (3) 'there was a causal connection between the protected activity and the adverse action.'" *Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1258 (11th Cir. 2012) (citation omitted). There is no dispute that Plaintiff established the first element of a retaliation claim by filing two EEOC complaints. (SMF ¶¶ 28–31).

With respect to the second element, "[a] materially adverse employment action is an action that 'might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Calicchio v. Oasis Outsourcing Grp. Holdings, L.P.*, No. 21-12854, 2022 U.S. App. LEXIS 19538, at *11 (11th Cir. July 15, 2022) (quoting *Burlington N. & Santa Fe Ry. Co.*

*v. White*, 548 U.S. 53, 68 (2006)).  Importantly, "Title VII's protection against retaliation 'is not limited to discriminatory actions that affect the terms and conditions of employment.'" *Varnedoe v. Postmaster Gen.*, No. 21-11186, 2022 U.S. App. LEXIS 178, at \*6 n.1 (11th Cir. Jan. 4, 2022) (citation omitted).

With respect to the third element, "[t]o show a causal connection, the plaintiff must show that (1) the decision-maker knew of [his] protected activity, and (2) the protected activity and adverse action were not wholly unrelated." *Calicchio*, 2022 U.S. App. LEXIS 19538, at \*11. "At a minimum, [a plaintiff] must show that the adverse act followed the protected conduct[.]" *Griffin v. GTE Fla., Inc.*, 182 F.3d 1279, 1284 (11th Cir. 1999). "It is not enough for the plaintiff to show that someone in the organization knew of the protected expression; instead, the plaintiff must show that the person taking the adverse action was aware of the protected expression." *Bass v. Bd. of Cnty. Comm'rs, Orange Cnty., Fla.*, 256 F.3d 1095, 1119 (11th Cir. 2001). "Close temporal proximity between the protected activity and the adverse action may be sufficient to show that the two were not wholly unrelated." *Id.* "In the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (citation omitted).

If a plaintiff can establish a *prima facie* case of retaliation, the burden shifts to the employer to "articulate a legitimate, nondiscriminatory reason for its actions." *Lewis I*, 918 F.3d 1221. "Because the employer's burden is one of production—not persuasion—the employer 'need not persuade the court that it was actually motivated by the proffered reason[].'" *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1205 (11th Cir. 2013) (quoting *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2009) (en banc)).  The reasons "need only be specific enough so that

the 'plaintiff [is] afforded a full and fair opportunity to demonstrate pretext.'" *Id.* (alteration adopted) (quoting *Chapman*, 229 F.3d at 1034). If the employer carries its burden of production, the burden shifts back to plaintiff to "introduce evidence 'sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.'" *Id.* (quoting *Chapman*, 229 F.3d at 1024). In other words, Plaintiff must show the employer's reason was a pretext for discrimination. *See id.* at 1025–26.

The Court pauses here for a brief recap of the facts. In March 2014, Drs. Romberg and McKemy wrote the Memorandum regarding their concerns about Plaintiff's identifications. (ECF No. 34-14). In February 2016, Mr. Millan sent Plaintiff the LOI. (ECF No. 34-15). In June 2016, Plaintiff filed his first EEOC complaint. (ECF No. 34-11). In February 2017, Mr. Caraballo issued the LOR. (ECF No. 34-17). In September 2017, Plaintiff filed his second EEOC complaint. (ECF No. 34-12). In October 2017, the pipe leak at the NIS lab occurred. (ECF No. 34-18).

Defendant is entitled to summary judgment on Count III for several reasons. First, Plaintiff has not established a *prima facie* case of retaliation. There is no evidence in the record showing a causal link between Plaintiff's EEOC complaints and the challenged conduct. The first EEOC complaint was filed almost four months after the LOI and more than two years after the Drs. Romberg and McKemy wrote the Memorandum. (*See* SMF ¶¶ 28, 33, 36). This timing shows that the issues with Plaintiff's performance began well before Plaintiff's first grievance. Just because Plaintiff's performance did not improve, and Plaintiff's work continued to be scrutinized, does not, without more, suggest retaliation. In fact, it suggests the opposite—that USDA had legitimate concerns over Plaintiff's work. To the extent Plaintiff alleges that USDA retaliated against Plaintiff following the second EEOC complaint by destroying his samples due

to secondary mold from the water leak, or by failing to return the samples, such contentions are entirely unsupported by the record.

Furthermore, Plaintiff's first EEOC complaint was filed about eight months before the LOR, a gap too distant to support a causal relationship for retaliation. *See Thomas*, 506 F.3d at 1364 (holding that a three-month gap was insufficient to show causation); *see also McNeal v. Int'l Paper*, No. 21-12672, 2022 U.S. App. LEXIS 28082, at *15 (11th Cir. Oct. 7, 2022) (concluding that a gap of five months between the grievance and termination was too distant to show a causal relationship).   In addition, there is no evidence in the record that Drs. Romberg and McKemy—whom Plaintiff contends created false information regarding his misidentifications—knew about the first EEOC complaint before USDA issued the LOR.   Same goes for Plaintiff's supervisors, Mr. Caraballo and Mr. Volpe.   The Court notes that before the LOR, and in response to instructions from Mr. Caraballo regarding how to properly input notations in the ARM system, Plaintiff mentioned that the discussed issues were "under legal investigation."   (Dec. 6, 2016, E-mail Chain at 10–11, ECF No. 34-17).   But Plaintiff's response—which was forwarded to Mr. Volpe and Mr. Farmer—does not demonstrate that Mr. Caraballo—who issued the LOR—knew that the issues were "under legal investigation" had anything to do with Plaintiff's complaint of discrimination or harassment.

Second, USDA has presented a legitimate, non-discriminatory reason for the LOR and continued scrutiny of Plaintiff's performance.   The record reflects that Plaintiff, among other concerns, had a low-accuracy identification rate and failed to send complete samples to NIS for confirmation identification.   To show pretext, Plaintiff must confront the employer's reason "head on and rebut it."   *See Kidd*, 731 F.3d at 1206.   He can do this by "revealing such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [the employer's]

proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1348 (11th Cir. 2007) (citation and internal quotations omitted). "A reason is not pretext for discrimination unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (emphasis in original) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, (1993)). Here, Plaintiff has failed to put forth any evidence showing that his performance was not deficient in the ways identified by USDA and NIS, or that discrimination was the real reason for the criticism. As for any other supposedly materially adverse actions Plaintiff faced, there are insufficient facts to create a reasonable inference of retaliation.

Separately, the Court acknowledges Plaintiff's assertion that he was constructively discharged from his position. (Compl. ¶ 27; *see also* Msikita Dep. at 117:9–118:21). "Constructive discharge occurs when an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job." *Bryant v. Jones*, 575 F.3d 1281, 1298 (11th Cir. 2009); *see also Zarza*, 686 F. App'x at 753 ("Constructive discharge occurs when an employer deliberately makes an employee's working conditions so unbearable that a reasonable person in that position would be compelled to resign."). "Establishing a constructive discharge claim is a more onerous task than establishing a hostile work environment claim." *Bryant*, 575 F.3d at 1298. Here, Plaintiff has not shown a hostile work environment claim, let alone constructive discharge. Accordingly, to the extent Plaintiff asserts a constructive discharge claim, it fails. *See Zarza*, 686 F. App'x at 753 ("Because Plaintiff has not shown that the mistreatment directed toward him rose to the level necessary to sustain a hostile work environment claim, his constructive discharge claim also fails.").

III.     **CONCLUSION**

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1.     Defendant's Motion for Summary Judgment, (ECF No. 35), is **GRANTED**.

2.   All pending motions are **DENIED AS MOOT**.

3.   The Clerk of Court is **DIRECTED** to **CLOSE** this case and terminate the Calendar

Call and Trial scheduled in this matter.

4.   The Court with enter Final Judgment by separate order pursuant to Federal Rule of

Civil Procedure 58.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 23 day of March, 2023.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Becerra
All Counsel of Record

23